UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    JS-6

CIVIL MINUTES -- GENERAL

Case No.   **CV 16-9141-JFW (JCx)**                                    Date:  July 14, 2017

Title:     Lindie L. Banks, et al. -v- Northern Trust Corporation

---

**PRESENT:**

    **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**         **ATTORNEYS PRESENT FOR DEFENDANTS:**
    None                                                                              None

**PROCEEDINGS (IN CHAMBERS):**   **ORDER DENYING AS MOOT PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [filed 6/5/17; Docket No. 52]; and**

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT [filed 6/19/17; Docket No. 63]**

On June 5, 2017, Plaintiffs Lindie L. Banks and Erica LaBlanc, individually and on behalf of all others similarly situated (collectively, "Plaintiffs") filed a Motion for Class Certification.  On June 12, 2017, Defendants Northern Trust Corporation ("NT Corp.") and Northern Trust Company ("Northern") (collectively, "Defendants") filed their Opposition.  On June 19, 2017, Plaintiffs filed a Reply.  On June 19, 2017, Defendants filed a Motion to Dismiss First Amended Class Action Complaint ("Motion to Dismiss").  On June 26, 2017, Plaintiffs filed their Opposition.  On July 3, 2017, Defendants filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument.  The hearing calendared for July 17, 2017 is hereby vacated and the matters taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**

Plaintiffs are beneficiaries of the "Lindstrom Trust."  First Amended Complaint ("FAC"), ¶ 16. Northern is a financial services company that serves as the trustee for the Lindstrom Trust and retains sole discretion to invest the Trust's assets.  *Id.*, ¶¶ 16, 179,187, 323, and 333.  NT Corp. is

Northern's parent company.[1]  Plaintiffs purportedly represent a putative class consisting of beneficiaries of trusts for which Northern serves as trustee and has exclusive investment discretion.  *Id.*, ¶ 349.

On December 9, 2016, Plaintiffs filed a Complaint against Defendants, alleging causes of action for: (1) breach of fiduciary duty in connection with fund selection; (2) unjust enrichment or restitution; (3) accounting as to the fund-related claims; (4) breach of fiduciary duty in connection with tax preparation fees; (5) accounting as to the tax preparation claims; (6) unfair competition under California Business and Professions Code § 17200; and (7) elder abuse under California Welfare and Institutions Code §§ 15600, *et seq*.  In their Complaint, Plaintiffs alleged that Defendants undertook a "plan" or "program" to enrich themselves by investing trust assets in Northern-affiliated investment funds, violating their fiduciary duties.  Complaint, ¶¶ 25, 33, and 179.  According to Plaintiffs, those investments were not in the best interest of the trust beneficiaries and were made solely to benefit Defendants.  *Id.*, ¶¶ 38, 66-97, and 169-222.  On June 2, 2017, the Court dismissed Plaintiffs' Complaint, and concluded that all of Plaintiffs' claims were precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  Although the Court expressed "serious reservations" as to Plaintiffs' ability to amend their Complaint to avoid SLUSA claim preclusion, the Court, in light of the Ninth Circuit's liberal policy favoring leave to amend, granted Plaintiffs an opportunity to amend their Complaint.

On June 5, 2017, Plaintiffs filed their First Amended Complaint.  In their First Amended Complaint, Plaintiffs allege the same seven claims for relief against Defendants as alleged in their original Complaint.  Plaintiffs again allege that Defendants breached their fiduciary duties by engaging in a surreptitious "internal business plan" of investing trust assets in Defendants' "own financially related investment vehicles."  FAC, ¶¶ 29 and 274.  Specifically, Plaintiffs allege that "[i]n regard to Defendants' investments in mutual funds, none of the choices made by Defendants were untainted by their own pecuniary self-interest," that defendants do not invest in competitors' funds "because there is no financial incentive for [Defendants] to do so," and that "[t]he financial benefits" Defendants receive from investing trust assets primarily in affiliated securities "are significant and [to] the detriment [of] the Plaintiffs."  *Id.*, ¶¶ 58, 161, 311.  Plaintiffs also contend that Defendants engaged in a practice of rebating mutual fund management fees to the trusts, which "allowed [Defendants] to use and retain the money, and profit by that use, without returning an appropriate additional money for the use of the trust assets" or advising beneficiaries "that they were entitled to an additional remedy."  *Id.*, ¶¶ 74-75, 81, 85.  Plaintiffs allege that Defendants' practices reduced the "rate of return" on trust investments.  *Id.*, ¶ 231.

## II.   Legal Standard

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d

---

[1]  Plaintiffs allege claims against NT Corp. on the ground that NT Corp. "directs and approves the actions of its subsidiaries."  *Id.*, ¶ 29.

696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### III.    Discussion

SLUSA compels the dismissal of any "covered class action" that alleges (1) that the defendant made "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security" or (2) "that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). The Ninth Circuit has held that SLUSA bars any state-law class action brought on behalf of 50 or more putative class members, "whether styled in tort, contract or breach of fiduciary duty, that in essence claim[s] misrepresentation or omission in connection with certain securities transactions."[2] *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1114 (9th Cir. 2013); *see also Stoody-Broser v. Bank of Am., N.A.*, 442 F. App'x 247, 249 (9th Cir. 2011) (holding that SLUSA applies where a covered class action "allege[s], either expressly or implicitly, misrepresentations, omissions, or fraudulent practices").

---

[2] It is undisputed that the putative class in this case includes more than 50 people.

In their Motion, Defendants argue that Plaintiffs' First Amended Complaint should be dismissed because all of Plaintiffs' claims are precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").[3]  Defendants argue that the only changes Plaintiffs made to the allegations of their First Amended Complaint were to remove "securities law buzzwords" and delete "paragraphs from the original [C]omplaint that obviously triggered SLUSA preclusion, while leaving the substance of their claims intact."  Defendants' Statement of Decision, 4:10-12.  The Court agrees.  Plaintiffs "cannot avoid the application of SLUSA by removing covered words from its complaint but leaving in the covered concepts."  *Zweiman v. AXA Equitable Life Ins. Co.*, 146 F. Supp. 3d 536, 546-48 (S.D.N.Y. 2015) (dismissing complaint in subsequent action that was "selectively edited . . . to delete 'magic words' or 'red flags' identifying [plaintiff's previous] claim to be a securities fraud claim precluded by SLUSA"); *Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377, 384-85 (E.D.N.Y. 2002) (holding that a plaintiff cannot "artfully avoid SLUSA" by amending their complaint to excise "the allegations that the defendant engaged in fraudulent conduct" where the "crux of the amended complaint" continues to allege a deceptive scheme in connection with covered securities); *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095-96 (11th Cir. 2002) (affirming dismissal of amended complaint where plaintiff "delete[d] all claims and allegations that might be deemed to fall within the scope of the SLUSA," but nevertheless "implicitly alleged" concealment); *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 693 (S.D.N.Y. 2006) (affirming dismissal of amended complaint that pled "a securities fraud wolf dressed up in a breach of contract sheep's clothing").

In this case, the substance of Plaintiffs' allegations in the First Amended Complaint is no different from the substance of their original Complaint.  The First Amended Complaint still contains multiple allegations that Defendants engaged in a "manipulative or deceptive device or contrivance" with respect to the "purchase or sale of a covered security" by systematically favoring their own pecuniary interests to Plaintiffs' detriment which, as this Court previously held, is conduct covered by SLUSA.  *See* 15 U.S.C. §§ 77p(b) and 78bb(f)(1)).  Plaintiffs also continue to allege express and implied "misrepresentations or omissions of material fact" in connection with the investment of trust assets in Northern-affiliated funds, which independently triggers SLUSA.  *See* 15 U.S.C. §§ 77p(b), 78bb(f)(1).  Therefore, the claims in Plaintiffs' First Amended Complaint, like those in their original Complaint, are precluded by SLUSA.

### A. Plaintiffs' Challenge Conduct Was Undertaken "In Connection With" The Purchase or Sale of Covered Securities.

The threshold element required for SLUSA preclusion of state law class action claims is that the challenged conduct was undertaken "in connection with the purchase or sale of a covered security."[4]  15 U.S.C. §§ 77p(b), 78bb(f)(1).  The Supreme Court has specifically held that the "in

---

[3]  Defendants also make other arguments as to why Plaintiffs' First Amended Complaint should be dismissed, but because the Court agrees with Defendants that all of Plaintiffs' claims are precluded by SLUSA, the Court need not address those arguments.

[4]  Plaintiffs do not dispute that the mutual funds in which Defendants invested trust assets are covered securities.  *See* 15 U.S.C. §§ 77r(b)(2), 77p(f)(3), 78bb(f)(5)(E); *Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 929 (7th Cir. 2017) (holding that "mutual funds are securities" covered by SLUSA).

connection with" requirement is to be given a "broad interpretation." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006).

In the First Amended Complaint, Plaintiffs continue to allege that Northern, as Trustee of the Lindstrom Trust, rather than Plaintiffs, made the investment decisions. However, as this Court discussed in its June 2, 2017 Order dismissing Plaintiffs' original Complaint, numerous federal courts have held that investments made by a plaintiff's agent meet SLUSA's "in connection with" requirement. *See, e.g., Holtz*, 846 F.3d at 933 ("That some of the investment decisions were made by investment advisers as [the plaintiff's] agent does not take [the case] out of the 'in connection with' domain"); *Siepel v. Bank of America, N.A.*, 526 F.3d 1122, 11247 (8th Cir. 2008) (concluding that SLUSA prohibits "state-law claims that a trustee breached its fiduciary duty by failing to disclose conflicts of interest in its selection of nationally-traded investment securities"); *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009) ("All of Segal's counts – breach of fiduciary duty, unjust enrichment, breach of contract – revolve around Fifth Third's decision to buy mutual fund shares. Segal's allegations do not merely 'coincide' with securities transactions; they depend on them"); *Goodman v. AssetMark, Inc.*, 53 F. Supp. 3d 583, 590 (E.D.N.Y. 2014) (rejecting the suggestion that "SLUSA cannot apply whenever the defendant accused of fraud, instead of the plaintiff, was the one who purchased the covered securities").

Therefore, Plaintiffs' claims easily fall within the SLUSA's broad "in connection with" requirement.

### B.     Plaintiffs Have Alleged A "Manipulative or Deceptive Device or Contrivance."

SLUSA precludes state law class action claims that allege a "manipulative or deceptive device or contrivance" otherwise covered by Section 10(b) and Rule 10b-5. 15 U.S.C. §§ 77p(b)(2), 78bb(f)(1)(B). However, for SLUSA to apply, allegations of "manipulative or deceptive device or contrivance" need not involve a misrepresentation or omission. Instead, an allegation that the defendant "exercised [its] power of disposition for [its] own benefit" is sufficient. *SEC v. Zandford*, 535 U.S. 813, 821 (2002) (holding that the broker "was only able to carry out his fraudulent scheme without making an affirmative misrepresentation because the [customers] had trusted him to make transactions in their best interest without prior approval"); *see also In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 577-79 (S.D. Tex. 2002) (collecting examples of the type of conduct held to violate Section 10(b), and noting that they are "not merely limited to the making of an untrue statement of material fact or omission").

In their First Amended Complaint, as in their original Complaint, Plaintiffs allege that Defendants have undertaken an "internal business plan" to favor its own affiliated mutual funds when investing trust assets. FAC, ¶ 29. In addition, Plaintiffs allege that, under this plan, "[i]n regard to Defendants' investments in mutual funds, none of the choices made by Defendants were untainted by their own pecuniary self-interest." *Id.*, ¶ 311. Plaintiffs also allege that "[t]he recurring theme of Defendants' conduct . . . is that Defendants allowed their own financial interest . . . . to influence their decision-making process in regard to investing trust assets" (*id.*, ¶ 330), and that defendants "approv[ed] investments for trust assets under their management because they were financially related to Defendants." *Id.*, ¶ 362. Moreover, Plaintiffs newly allege that Defendants improperly charge mutual fund management fees to the trusts and then rebate those fees so that they can "use and retain the money, and profit by that use, without returning an

appropriate additional money for the use of the trust assets." *Id.*, ¶¶ 74-81. These are precisely the type of "deceptive device" claim that SLUSA was intended to preclude. *See, e.g., Montoya v. New York State United Teachers*, 754 F. Supp. 2d 466, 472-73 (E.D.N.Y. 2010) (holding that claims that a fiduciary made investment recommendations based on its own pecuniary gain rather than "based upon the best interests of the Plaintiffs" alleged a "manipulative or deceptive device" covered by SLUSA); *see also Zandford*, 535 U.S. at 821 (holding that liability under the securities laws attached when the defendant "exercised his power of disposition for his own benefit").

Therefore, Plaintiffs' claims easily fall within the SLUSA's "manipulative or deceptive device" requirement, and, because Plaintiffs' claims also meet the "in connection with" requirement, they are precluded by SLUSA.

### C. Plaintiffs Have Alleged A Material Misrepresentation or Omission.

SLUSA precludes state law class action claims alleging "misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." *Stoody-Broser*, 442 F. App'x at 247. "[M]isrepresentation need not be a specific element of the claim to fall within [SLUSA]'s preclusion." *Id.* Instead, courts ask "whether the complaint includes these types of allegations, pure and simple." *Segal*, 581 F.3d at 311; *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 701-02 (5th Cir. 2004) ("[T]he only question before us is whether Miller's breach of contract claim alleged that Nationwide made untrue statements . . . . Miller's complaint clearly does include such allegations . . . . We thus conclude that Miller's state law claim falls within the prohibition of [SLUSA]").

In determining if a particular state law class action claim includes an allegation of a misrepresentation that falls within SLUSA preclusion, courts routinely dismiss state law class action claims alleging that the defendant failed to disclose its conduct and practices in relation to investment of client assets in proprietary mutual funds. For example, in *Segal*, 581 F.3d at 309-10, the Sixth Circuit affirmed dismissal of state law breach of fiduciary duty and breach of contract claims alleging that the trustee bank "failed to inform trust beneficiaries that their trust accounts would be invested in proprietary mutual funds." Observing that courts "have no license to draw a line between SLUSA-covered claims that must be dismissed and SLUSA-covered claims that must not be," the Sixth Circuit held that whether the plaintiff's state law claims "depend on allegations of misrepresentation or manipulation" was irrelevant – the only question was "whether the complaint includes these types of allegations." *Id.* at 311. Similarly, in *Spencer v. Wachovia Bank, N.A.*, 2006 WL 3408043, *4 (S.D. Fla. May 10, 2006), the court held that SLUSA preempted breach of fiduciary duty claims involving allegations that the bank trustee "attempt[ed] to conceal" investments in proprietary funds and engaged in misleading marketing, because such allegations of nondisclosure involved "misrepresentations" that triggered the statute. *See also Stoody-Broser,* 442 F. App'x at 248 (affirming the dismissal of a complaint alleging that a trustee engaged in "omissions of material fact and deceptive practices" regarding investments in proprietary mutual funds).

In their First Amended Complaint, Plaintiffs continue to allege a variety of express and implied misrepresentations and omissions in connection with investment of trust assets in Northern-affiliated funds. For example, Plaintiffs allege that Defendants have "an internal policy" – a policy that is not disclosed to trust beneficiaries – "of not using competitor's [*sic*] mutual funds in

lieu of the Northern Trust Family of Funds." FAC, ¶ 168; *see also id.*, ¶¶ 283-84 (alleging that Defendants "routinely and uniformly favor and direct investment of trust assets into financially related instruments" to serve their "internal goals" of "retain[ing] investment in Defendants' own proprietary funds"). In addition, Plaintiffs allege that Defendants follow "an internal business plan which requires and instructs [Defendants'] officers and employees to select funds from a '[Northern] Guidance List' that causes man[a]gers to invest personal trust assets in the Northern Trust Family of proprietary funds to the exclusion of the rest of the markets." *Id.*, ¶ 29. Plaintiffs also allege that "Defendants have stated verbally to certain beneficiaries" – though not to Plaintiffs – "that there is an internal policy of forced investment only in the Northern Funds Portfolio affiliated funds for trusts with assets under a value of $5,000,000." *Id.*, ¶ 144. Plaintiffs' allegations that Defendants wrongfully invested trust assets in affiliated funds to satisfy purportedly disloyal "internal" plans, policies, and goals necessarily imply that Defendants concealed those plans, policies, and goals from trust beneficiaries. *See, e.g., Rayner v. E*TRADE Fin. Corp.*, --- F. Supp. 3d ----, 2017 WL 1232730, *5 (S.D.N.Y. Apr. 3, 2017) (holding that plaintiff alleged misrepresentations or omissions because "plaintiff's claims necessarily challenge what E*TRADE told the plaintiff about its execution practices, and the nature of E*TRADE's [disclosure] obligations to the plaintiff"). Moreover, Plaintiffs have now added allegations that Defendants "did not advise the putative class that they were entitled to an additional remedy" beyond a rebate of fund management fees, and that this alleged "silence is an additional breach of the duty of loyalty." FAC, ¶¶ 85-86.

Because Plaintiffs have alleged a variety of express and implied misrepresentations and omissions in connection with investment of trust assets in Northern-affiliated funds in their First Amended Complaint, and, because Plaintiffs' claims also meet the "in connection with" requirement, their claims are precluded by SLUSA.

## IV. Conclusion

For all the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. Plaintiffs' First Amended Complaint is **DISMISSED without leave to amend**, and this action is **DISMISSED with prejudice**. Plaintiffs' Motion for Class Certification is **DENIED as moot**.

IT IS SO ORDERED.