**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | |
|---|---|
| Case No.  **CV 16-9141-JFW (JCx)** | Date: March 5, 2020 |

Title: Lindie L. Banks, et al. -v- Northern Trust Corporation

---

**PRESENT:**
  **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

|  |  |
|---|---|
| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**  ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [filed 1/27/20; Docket No. 114]

On January 27, 2020, Defendants Northern Trust Corporation ("NT Corp.") and The Northern Trust Company ("Northern") (collectively, "Defendants") filed a Motion for Summary Judgment ("Motion"). On January 31, 2020, Plaintiffs Lindie L. Banks ("Banks") and Erica LeBlanc ("LeBlanc") (collectively, "Plaintiffs") filed their Opposition. On February 10, 2020, Defendants filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's February 24, 2020 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.  Factual and Procedural Background[1]**

  **A.  The Parties**

Northern is a financial services company that was founded in 1889 and is a wholly owned subsidiary of NT Corp. Northern provides asset services, fund administration, asset management, fiduciary, and banking solutions for corporations, institutions, families, and individuals. Northern

---

[1] To the extent any of these facts are disputed, they are not material to the disposition of this motion. In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections. As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

services client assets through its Wealth Management business, which provides investment management, philanthropic, and other services to individuals, families, business owners, professionals, retirees, and privately held businesses. Northern serves as trustee for nearly 30,000 unique trusts in the United States. In this role, Northern carries out varying trust terms and performs accounting, reporting, investment management, tax, and other administrative services.

Banks, who is 87 years old, is a beneficiary of two trusts: (1) the irrevocable Katherine Lindstrom Trust (the "KL Trust"), created in 1961; and (2) the Ralph G. And Katherine Lindstrom Trust (the "RGKL Trust"), created in 1964 and which became irrevocable in 1975.[2] LeBlanc is Banks' daughter and a remainder beneficiary of the KL Trust and the RGKL Trust (collectively, the "Lindstrom Trusts"). Northern has served as the trustee for the Lindstrom Trusts since the early 1990s and has sole discretion on how to manage the trusts' assets.[3]

### B. Management of the Lindstrom Trusts by Northern

#### 1. Investment of the Lindstrom Trusts' Assets

Grantors establish trusts, which are defined by written instruments, to serve the particular desires, needs, and circumstances of the grantors and beneficiaries. As trustee of the Lindstrom Trusts, Northern is charged with carrying out the specific terms of the Lindstrom Trusts and performing other services, such as accounting, reporting, and investment management. In accordance with its general practice, Northern assigned both a trust administrator, who is also known as a "relationship manager," and a portfolio manager, or "PM," to the Lindstrom Trusts. The relationship manager is responsible for general trust administration, including making distributions and communicating with beneficiaries. Working with the trust administrator, the PM sets an investment objective that defines the risk characteristics and investment goals for the Lindstrom Trusts and influences the investment strategy selected by the PM. Since at least 2011, the investment objective selected for both Lindstrom Trusts has been "Growth With Income," which is "intended to provide long-term capital appreciation and current income" for "moderately aggressive investors with a long-term investment horizon."[4] *See* Account Summaries (Exhs. 8-15 to the Singer Decl.).

---

[2] The KL Trust and the RGKL Trust are attached to the Declaration of Stacy E. Singer ("Singer Decl.") as Exhibits 3 and 5, respectively.

[3] The Lindstrom Trusts originally designated Title Insurance and Trust Company ("TI") as trustee, which was later consolidated with Trust Services of America, Inc. ("TSA"). TSA administered the Lindstrom Trusts until Northern acquired them in the early 1990s.

[4] The Lindstrom Trusts' investment objectives and portfolios have varied over time. Since at least 2000, the trusts have been invested in at least one Northern proprietary mutual fund. In January 2000, Banks asked Northern to redirect the focus of the trusts' portfolios in order to increase her monthly income, and Northern complied with her instructions. Banks also has requested specific investments. In 2004, the trusts' PM rebalanced the Lindstrom Trusts' portfolios using a model portfolio that included several proprietary index funds.

The Lindstrom Trusts' instruments specifically authorize Northern to "invest and reinvest all principal . . . in any kind of investment" using the "judgment and care, under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs." In implementing those provisions of the Lindstrom Trusts, the PMs select from among hundreds of investment options approved by Northern's Investment Advisory Committee ("IAC") for trust investments, which include: (1) proprietary and non-proprietary mutual funds; (2) individual equities; (3) individual fixed-income securities; and (4) model portfolios comprised of mutual funds, ETFs, and similar vehicles, which are constructed to achieve particular investment objectives, and are reviewed and approved for use in trust accounts by the IAC.[5] Since late 2008, Northern has invested the Lindstrom Trusts's assets in a model portfolio that includes seven proprietary index funds (the "Northern Index Funds"): (1) the Northern Stock Index; (2) the Northern Small Cap Index; (3) the Northern International Equity Index; (4) the Northern Mid Cap Index; (5) the Northern Emerging Markets Equity Index; (6) the Northern Global Real Estate Index; and (7) the Northern Bond Index. The Lindstrom Trusts have held investments in all seven of the Northern Index funds continuously since 2011.

The Lindstrom Trusts' PMs regularly reviewed the performance of the investments and whether the trusts' investment allocations conform to their assigned investment objective. The PMs conduct a formal review at least once per year to determine whether the investments remained appropriate for the trust.

Northern has sent quarterly statements to Banks since at least 2000, and to LeBlanc since at least 2008. In each quarterly statement, Northern provided a complete listing of the Lindstrom Trusts' holdings as of the end of the quarter. In fact, both Plaintiffs admitted in their depositions that they personally received the quarterly statements, which advise that "[c]laims against the trustee(s) may not be made after the expiration of three years from the date you receive an account or report disclosing facts giving rise to the claim." Northern has also provided each proprietary fund's annual summary prospectus to Banks, which disclosed the expense ratio of each fund. Plaintiffs also admitted in their deposition that "the purchasing, maintaining and sale of investments" has not "been hidden from" them.

### 2. Assessment of Fees for Preparation of the Lindstrom Trusts' Tax Returns

Unlike most trusts Northern administers, the Lindstrom Trusts have an unusual fee provision that authorizes an annual fee of three-fifths of one percent (*i.e.*, 0.60%) of assets under

---

[5] In order for an investment option to be approved, Northern carefully evaluates multiple factors, such as how closely the fund tracks its stated benchmark, cash investment and securities lending, performance, benchmark stability, expense ratio, communication with managers, and management turnover. Northern modifies the list of approved investment options periodically to provide PMs a broad range of options to accommodate different client needs. The current list of approved investment options ("Capabilities List") includes approximately 440 products, of which approximately 325 are approved for use in trusts. Of those 325, approximately 150 are proprietary, and approximately 175 are sponsored by unaffiliated firms, such as Vanguard or Dimensional Fund Advisors.

management, plus "reasonable compensation" for "extraordinary services." Specifically, the RGKL Trust provides that the "fees of the trustee are hereby fixed" as "an annual fee of three fifths of one per cent [0.60%] of the reasonable value of all [non-real estate] assets of the trust estate" as well as "[r]easonable compensation . . . for other services of an extraordinary nature." The KL Trust similarly provides that the "fees for handling [the] trust" will be "3/5 of $1 [0.60%] of the fair market value of the corpus" as well as "[r]easonable compensation" for any "extraordinary services." Pursuant to these provisions, prior to 2012, Northern assessed an annual trustee fee of 0.60% of the trust's assets and a tax preparation fee to each Lindstrom Trust. Since 2012, Northern has not assessed an annual trust fee to the Lindstrom Trusts, but continued to charge the tax preparation fee. However, the tax preparation fee, discussed below, has been less than 0.60% of each trust's assets.

With respect to the tax preparation fee, Northern has charged the Lindstrom Trusts an annual fee for that service since it became trustee in the early 1990s. The predecessor trustee to Northern, TSA, also charged a separate tax preparation fee to the Lindstrom Trusts since at least the 1980s and described those fees as "extraordinary fees." From 2012 through 2014, Northern charged each Lindstrom Trust a tax preparation fee of $650. From 2015 through 2016, Northern charged each trust a tax preparation fee of $900. From 2017 through 2019, Northern charged each trust a tax preparation fee of $1,000. Northern itemized each charge on the contemporaneous quarterly account statements sent to both Plaintiffs and described the fee as the "FEE OF THE NORTHERN TRUST FOR PREPARATION OF THE [YEAR] FIDUCIARY INCOME TAX RETURNS." Northern also sent notices to Plaintiffs each time the tax preparation fee changed. Banks testified at her deposition that she has been aware of the tax preparation fee at least since 2003, and recognized it as a line item that appeared on her account statements in the second quarter of each year since at least 2000. LeBlanc testified in her deposition that although she receives notices and account statements for the Lindstrom Trusts, she generally shreds them without reviewing their content.

### C. Procedural History

On December 9, 2016, Plaintiffs filed a Class Action Complaint against Defendants. On June 5, 2017, after the Court granted Defendants' Motion to Dismiss with leave to amend, Plaintiffs filed their First Amended Class Action Complaint.[6] In their First Amended Complaint, Plaintiffs allege causes of action for: (1) breach of fiduciary duty in connection with fund selection; (2) unjust enrichment; (3) accounting as to the fund-related claims; (4) breach of fiduciary duty in connection with tax preparation fees; (5) accounting as to the tax preparation claims; (6) unfair competition under California Business and Professions Code § 17200 ("UCL"); and (7) elder abuse under California Welfare and Institutions Code §§ 15600, *et seq.* ("Elder Abuse law").

---

[6] On July 14, 2017, the Court entered an Order dismissing the First Amended Class Action Complaint without leave to amend. Plaintiffs appealed the Court's July 14, 2019 Order, and on July 29, 2019, the Ninth Circuit reversed the Court's dismissal of this action. On December 6, 2019, the Court denied Plaintiffs' Motion for Class Certification.

In their First Amended Complaint, Plaintiffs allege that Northern[7] breached its duty of loyalty and prudent investment by investing the Lindstrom Trusts' assets in Northern's own proprietary "Northern Funds Portfolio" rather than seeking superior investments outside its financial umbrella. In addition, Plaintiffs allege that Northern breached its fiduciary duty to Plaintiffs by charging improper and excessive tax preparation fees for the routine preparation of fiduciary tax returns and by failing to provide documentation to support the reasonableness of those charges.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group*, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

---

[7] Each of the seven causes of action are alleged against both Defendants. Plaintiffs allege claims against NT Corp. on the ground that NT Corp. "directs and approves the actions of its subsidiaries."

## III. Discussion

### A. Northern Is Entitled to Summary Judgment on Plaintiffs' Investment Related Breach of Fiduciary Duty Claim.

In their first cause of action, Plaintiffs allege a claim for breach of fiduciary duty based on Northern's investment of the Lindstrom Trusts' assets in proprietary mutual funds. To prevail on a claim for breach of fiduciary duty, a plaintiff must demonstrate: (1) the existence of a fiduciary relationship; (2) its breach; and (3) damage proximately caused by that breach.[8] *Love v. The Mail on Sunday*, 489 F. Supp. 2d 1100, 1104 (C.D. Cal. 2007). Plaintiffs bear "the initial burden of proving … the trustee's failure to perform" a fiduciary duty. *LaMonte v. Sanwa Bank of Calif.*, 45 Cal. App. 4th 509, 517 (1996).

Although Plaintiffs' investment related claims focus on Northern's investment of the Lindstrom Trusts' assets in proprietary mutual funds, California law expressly provides that a trustee does not breach its fiduciary duties simply by investing in a proprietary fund. For example, Section 16015 of the California Probate Code specifies that "[t]he provision of services for compensation by a regulated financial institution or its affiliates in the ordinary course of business . . . to a trust of which it also acts as trustee . . . is not a violation of the [trustee's] duty provided in Section 16002 [duty of loyalty] or 16004 [duty to avoid conflicts of interest]."[9] In addition, courts and other authorities have interpreted Section 16015 and analogous state statutes to permit a trustee to invest trust assets in mutual funds managed by an affiliated company that charges a management fee. *See, e.g., In re JP Morgan Chase Bank N.A.*, 122 A.D.3d 1274, 1277 (N.Y. App. Div. 2014) (holding that New York's "Prudent Investor Act permits petitioner to invest trust assets in proprietary funds"); John H. Langbein, *Questioning the Trust Law Duty of Loyalty: Sole Interest or Best Interest?*, 114 Yale L.J. 929, 974 & n.233 (2005) (observing that "[v]irtually all states have intervened to exempt affiliated mutual funds from the sole interest rule") (*citing* Cal. Prob. Code. § 16015). Moreover, Section 1582 of the California Financial Code provides that a trust company may, "unless the trust instrument provides expressly to the contrary, invest and reinvest in the securities of . . . any fund to which the trust company or its affiliate is providing services," so long as the trust company provides annual disclosure (by prospectus, account statement, or otherwise) of the fund's expense ratio. As a result, under California law, a trust company's investment of trust assets in a proprietary mutual fund is neither a breach of the duty of loyalty nor a conflict of interest, so long as the trust instrument permits the investment and the trust company makes appropriate disclosures. In this case, the Lindstrom Trusts give Northern broad authority to "invest and reinvest all principal" of the trusts "in any kind of investment," and do not prohibit investment in proprietary products. In addition, Plaintiffs expressly admitted that the "purchasing, maintaining and sale of [proprietary fund] investments" had not "been hidden from"

---

[8] Northern does not dispute the existence of a fiduciary relationship, but argues that Plaintiffs cannot demonstrate the second or third elements of their claim for breach of fiduciary duty.

[9] Pursuant to Section 16015, an "affiliate" is defined to "mean[] a corporation that directly or indirectly through one or more intermediaries controls, is controlled by, or is under common control with another domestic or foreign corporation."

them. First Amended Complaint ("FAC"), ¶ 40. Therefore, Plaintiffs cannot prevail on their claim for breach of fiduciary duty merely because Northern invested the Lindstrom Trusts' assets in the proprietary Northern Index Funds.

In an effort to avoid summary judgment, Plaintiffs argue that Northern breached its fiduciary duty to Plaintiffs by requiring its PMs to select funds from the Capabilities List which Plaintiffs characterize as "disproportionately" weighted towards proprietary funds and because the Northern Index Funds had higher expense ratios[10] than purportedly comparable Vanguard funds. To prevail on their claim, Plaintiffs must present admissible evidence that "in light of the facts and circumstances existing at the time of" Northern's investment decisions, and given "the context of the trust portfolio as a whole" and its "overall investment strategy," Northern failed to "exercise reasonable care, skill, and caution" when it purchased and held investments in the Northern Index Funds for the Lindstrom Trusts. *See* Cal. Prob. Code §§ 16047 and 16051. Factors to be considered by a trustee when making an investment decision include "[g]eneral economic conditions," "[t]he expected tax consequences of investment decisions or strategies," "[t]he role that each investment or course of action plays within the overall trust portfolio," and "[t]he expected total return from income and the appreciation of capital." Cal. Prob. Code § 16047.

However, Plaintiffs have failed to present any admissible evidence demonstrating that Northern's allegedly "disproprotionate" use of proprietary funds resulted in Northern's PMs failure to "exercise reasonable care, skill, and caution" in making investment decisions for the Lindstrom Trusts. To the contrary, Plaintiffs do not challenge the reasonableness of the "Growth with Income" investment objective that Northern established for the Lindstrom Trusts, Northern's overall investment strategy of allocating assets to a diversified set of mutual funds to meet that objective, that Northern's PMs appropriately monitored the portfolio at regular intervals, or the performance of the portfolio as a whole. In addition, Plaintiffs do not argue that any of the seven Northern Index Funds pursued a strategy that was inappropriate for the Lindstrom Trusts. In fact, the Northern Index Funds increased in value during the relevant period, tracking their benchmarks within a few tenths of a percentage point in almost all years, and returning substantial positive returns.[11] Specifically, the Lindstrom Trusts had a combined value of $913,451 at the end of December 2012, of which $679,239 was invested in Northern Index Funds, and by the end of October 2019, the trusts had a combined value of $1,147,040, of which $897,546 was invested in the Northern Index Funds. Moreover, Banks received distributions of more than $200,000 in income produced by the Lindstrom Trusts from 2012 to the present. Therefore, the Court concludes that Plaintiffs have failed to demonstrate that Northern's allegedly "disproportionate" use of proprietary funds constituted a breach of Northern's fiduciary duty to Plaintiffs.

In addition, the Court concludes that Plaintiffs' argument that the Northern Index Funds had

---

[10] An expense ratio is the annual fee that a fund charges their shareholders. It expresses the percentage of assets deducted each fiscal year for fund expenses, including 12b-1 fees, management fees, administrative fees, operating costs, and all other asset-based costs incurred by the fund.

[11] Each of the seven Northern Index funds is a passive index fund that tracks a standard industry benchmark, such as the S&P 500 or the Russell 2000.

higher expense ratios than purportedly comparable Vanguard funds is unpersuasive and unsupported by evidence.[12] Although Plaintiffs' expert, Dr. Steve Pomerantz ("Pomerantz"), selected seven Vanguard "institutional class" funds that had lower expense ratios than the Northern Index Funds, all seven of those funds required a $5 million minimum investment, which the Lindstrom Trusts could not meet and, thus, those funds are not comparable to the Northern Index Funds.[13] Moreover, even if Plaintiffs had identified a meaningful difference in the expense ratios charged by the Northern Index Funds as compared to other similar products, such a difference, without more, would not necessary constitute evidence of a breach of fiduciary duty.[14] The law does not require a fiduciary to "scour the market" for the "cheapest possible fund." *See Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009). Thus, "the existence of a cheaper fund does not mean that a particular fund is too expensive in the market generally or that it is otherwise an imprudent choice." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823–24 (8th Cir. 2018). In fact, "fiduciaries are required to consider factors beyond price when choosing investment options." *Patterson v. Capital Grp. Cos., Inc.*, 2018 WL 748104, at *5 (C.D. Cal. Jan. 23, 2018); *White v. Chevron Corp.*, 2016 WL 4502808, at *9 (N.D. Cal. Aug. 29, 2016) ("Fiduciaries have latitude to value investment features other than price (and indeed, are required to do so)").

Accordingly, Northern is entitled to summary judgment on Plaintiffs' first cause of action for

---

[12] In their Opposition, Plaintiffs argue for the first time that Northern did not adequately disclose the Northern Index Funds' expense ratios because the funds' full prospectuses were voluminous. However, Plaintiffs did not plead this theory, and a party cannot oppose summary judgment by raising grounds not at issue in the pleadings. *See, e.g., Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (holding that "[s]ummary judgment is not a procedural second chance to flesh out inadequate pleadings"). In addition, Northern is only required to disclose the funds' expense ratios "annually by prospectus" and there is no dispute that Northern did so. *See* Cal. Fin. Code § 1582(d); *see also Dodds v. Cigna Secs., Inc.*, 12 F.3d 346, 351 (2d Cir. 1993) ("[A] failure to read the prospectus is not excused because of the documents' length.").

[13] Although Pomerantz speculated that Vanguard might waive the $5 million requirement if Northern negotiated to create an "omnibus account" that included many trusts, he admitted at his deposition that he was unaware of Vanguard ever making such an agreement for personal trust accounts. The Court finds such speculation, which is not based on the facts of this case or industry standards generally, unpersuasive. *See, e.g., Wildman v. Am. Century Servs., LLC*, 362 F.Supp. 3d 685, 699 (W.D. Mo. 2019) (("the Court . . . finds Dr. Pomerantz's four [damages] models not credible and assigns them no weight" because they "are the result of speculation and are untethered to the facts of this case").

[14] In addition, Plaintiffs failed to dispute Northern's evidence that the expense ratios of the Northern Index Funds were generally at or below the median expense ratio for the universe of funds with similar investment styles and strategies, which is a "relevant criterion to assess whether [a mutual fund] fee is excessive." *Chill v. Calamos Advisors LLC*, 2019 WL 5067746, at *39 (S.D.N.Y. Oct. 9, 2019).

breach of fiduciary duty.[15]

> **B. Northern Is Entitled to Summary Judgment on Plaintiffs' Tax Fee Related Breach of Fiduciary Duty Claim.**

In their fourth cause of action, Plaintiffs allege a claim for breach of fiduciary duty based on the tax preparation fees charged by Northern that purportedly exceeded the amount of fees authorized by the Lindstrom Trusts. Plaintiffs also allege that Northern breached its fiduciary duty with respect to tax preparation fees by failing to properly account to Plaintiffs for the actual costs incurred in preparing the trusts' tax returns.

California Probate Code § 15680 provides that "the trustee is entitled to be compensated in accordance with the trust instrument." In addition, a trustee need only demonstrate that its compensation is "reasonable" if "the trust instrument does not specify the trustee's compensation." Cal. Prob. Code § 15681. In this case, the Lindstrom Trusts contain **both** a fee provision that authorizes an "annual fee of three fifths of one per cent [*i.e.*, 0.60%] of the reasonable value of" the trusts' assets for administering the trust, **and** a fee provision for "reasonable compensation" for "extraordinary services." Plaintiffs do not dispute Northern's evidence that its trustee compensation during the relevant period was below 0.60% of trust assets. Plaintiffs also do not offer any evidence that Northern's practice of charging a separate tax preparation fee is inconsistent with the practices of its competitors in the industry and that the amount charged by Northern is not comparable with market rates. Instead, Plaintiffs argue that the fee provision contained in the Lindstrom Trusts does not permit Northern to charge a 0.60% fee, but, instead, imposes a "cap" on Northern's compensation. However, Plaintiffs offer no factual or legal support for this argument. To the contrary, the Lindstrom Trusts specifically state that the trustee's annual fees "will be" (KL Trust) and "are hereby fixed as" (RGKL Trust) 0.60% of the value of the trusts' assets in addition to "reasonable compensation" for "extraordinary" services. Therefore, the Court concludes that Northern did not exceed the fees authorized by the Lindstrom Trusts during the relevant period.[16]

In addition, Plaintiffs argue, without any legal or factual support, that Northern has breached

---

[15] Because the claims against NT Corp. are based solely on NT Corp. "direct[ing] and approv[ing] the actions of" Northern, to the extent Northern is entitled to summary judgment on a claim, NT Corp. is also entitled to summary judgment.

[16] Because the Court concludes that Northern's fees were below 0.60% of the value of the Lindstrom Trusts' assets during all relevant years, the Court need not reach the issue of whether Northern's tax preparation fees were "reasonable compensation" for an "extraordinary" service. However, the Court nevertheless concludes that at the time the trusts were executed in 1961 and 1964, the contemporaneous understanding of "extraordinary" services included tax preparation services and, thus, tax preparation fees would constitute "reasonable compensation" for "extraordinary" services. *See* Cal. Prob. Code § 902 (1951) (providing that "extraordinary services" included "the preparation of estate, inheritance, income, sales or other tax returns"); *see also In re McMillin's Estate*, 46 Cal. 2d 121, 126 (1956).

its fiduciary duty because it has not maintained records of, or accounted to Plaintiffs for, the "actual cost" incurred in preparing the Lindstrom Trusts' tax returns. In fact, Northern is only required to provide an annual account statement that discloses the compensation paid to the trustee and its agents. Cal. Prob. Code § 16063. In addition, it is undisputed that Northern has complied with its obligations and delivered to Plaintiffs an account statement during the second quarter of each year that disclosed a "FEE OF THE NORTHERN TRUST FOR PREPARATION OF THE [YEAR] FIDUCIARY INCOME TAX RETURNS," and its amount.

Accordingly, Northern is entitled to summary judgment on Plaintiffs' fourth cause of action for breach of fiduciary duty.

### C. Northern Is Entitled to Summary Judgment on Plaintiffs' Remaining Claims Because Those Claims Cannot Survive in the Absence of a Breach of Fiduciary Duty Claim.

Northern is also entitled to summary judgment on Plaintiffs' remaining claims. Specifically, Northern is entitled to summary judgment on Plaintiffs' claims for unjust enrichment and accounting because those claims are derivative of Plaintiffs' unsuccessful breach of fiduciary duty claims. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("[T]here is no cause of action in California for unjust enrichment") (*quoting Melchoir v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003)); *Janis v. California State Lottery Com* ., 68 Cal. App. 4th 824, 833–34 (1998) ("A right to an accounting is derivative; it must be based on other claims").

In addition, Northern is entitled to summary judgment on its alleged violation of the UCL because it is also based on the same allegations as Plaintiffs' breach of fiduciary duty claims. *See, e.g., Metro Pub. Ltd. v. San Jose Mercury News, Inc.*, F.Supp. 870, 881 (N.D. Cal. 1994) (granting summary judgment on UCL claim where court granted summary judgment on underlying trademark claim). Moreover, despite Plaintiffs' argument to the contrary, Plaintiffs' UCL claim also fails because California law expressly permits Northern to engage in the conduct at issue, including investing trust assets in proprietary funds, hiring its affiliate to prepare trust tax returns for a reasonable fee, and collecting a fee for trust administration authorized by the trust instrument.

Finally, Northern is entitled to summary judgment on Banks' violation of the Elder Abuse law. To prevail on her Elder Abuse claim, Banks must demonstrate that: (1) she was 65 or older at the time of the challenged conduct; (2) Northern took, secreted, appropriated, obtained, or retained her property; (3) for a wrongful use or with intent to defraud, or by undue influence; and (4) with knowledge that doing so was "likely to be harmful" to her. Cal. Welf. & Inst. Code §§ 15610.27 and 15610.30. To establish the fourth element, Banks must prove that Northern "acted in subjective bad faith or unreasonably." *Paslay v. State Farm General Ins. Co.*, 248 Cal. App. 4th 639, 657 (2016). However, Banks has failed to produce any admissible evidence to demonstrate either the third of fourth element. In fact, Banks admitted that Northern did not defraud her. *See,* FAC, ¶ 325 ("These Plaintiffs and this Complaint do not allege in any fashion that Defendants engaged in misrepresentations, fraudulent omissions, or fraudulent practices . . ."). In addition, as discussed above, the Court has concluded that the undisputed evidence demonstrates that Northern appropriately invested Lindstrom Trusts' assets and charged only authorized fees with full transparency. Therefore, Northern neither took Banks' property for a wrongful use or by undue influence nor did it act unreasonably or in bad faith.

Accordingly, Northern is entitled to summary judgment on the second cause of action for unjust enrichment and restitution, third and fifth causes of action for accounting, sixth cause of action for violation of the UCL, and seventh cause of action for violation of the Elder Abuse law.

### D. Plaintiffs' Claims Prior to December 9, 2012 Are Barred by the Statute of Limitations.

It is undisputed that the relevant statute of limitations bar Plaintiffs' claims based on conduct that occurred prior to December 9, 2012. Specifically, California Probate Code Section 16460(a) provides that "[i]f a beneficiary has received an interim or final account in writing . . . that adequately discloses the existence of a claim against the trustee for breach of trust, the claim is barred as to that beneficiary unless a proceeding to assert the claim is commenced within three years after receipt of the account or report." It also provides that a claim for breach of trust is barred if "the beneficiary discovered, or reasonably should have discovered, the subject of the claim" more than three years before asserting it. Cal. Prob. Code § 16460(a)(2). Therefore, Plaintiffs' first and fourth claims for breach of fiduciary duty are subject to a three-year limitation period.[17] *Noggle v. Bank of America*, 70 Cal. App. 4th 853, 860-61 (1999). In addition, Plaintiffs' sixth claim for violation of the UCL and seventh claim for violation of the Elder Abuse law are each subject to a four-year statute of limitations, which begins running when a plaintiff has reason to know of the facts underlying her claims. *See* Cal. Bus. & Prof. Code § 17208; Cal. Welf. & Inst. Code § 15657.7; *Ivanoff v. Bank of Am., N.A.*, 9 Cal. App. 5th 719, 732-33 (2017).

Although it is undisputed that Plaintiffs' claims based on conduct that occurred prior to December 9, 2012 are barred by the relevant statute of limitations, Plaintiffs argue that the discovery rule tolls the limitation period because Northern has not provided a cost accounting with respect to its tax preparation fees and the expense ratios for the Northern Index Funds do not appear on account statements. However, as discussed above, Northern is not required to provide a cost accounting of its tax preparation fee. In addition, it is undisputed that since at least 2008 Northern has provided quarterly account statements to Plaintiffs itemizing all fees paid by the trusts during the quarter (including the tax preparation fee during the second quarter of each year), as well as each trust's holdings as of the end of the quarter (including the Northern Index Funds). Moreover, Northern has fully complied with its disclosure obligations regarding expense ratios by providing Banks with the annual prospectus summary of each of the Northern Index Funds. Accordingly, the Court concludes that the discovery rule does not toll the limitations period and Plaintiffs' claims that are based on conduct that occurred prior to December 9, 2012 are barred by the relevant statute of limitations. *See, e.g., WA Sw. 2, LLC v. First Am. Title Ins. Co.*, 240 Cal. App. 4th 148, 157 (2015) (holding that "even assuming for the sake of argument that each of the respondents had a fiduciary duty to plaintiffs, this does not mean that plaintiffs had no duty of inquiry if they were put on notice of a breach of such duty").

### IV. Conclusion

For all the foregoing reasons, Defendants' Motion is **GRANTED**. The parties are ordered to

---

[17] Plaintiffs second claim for unjust enrichment and third and fifth claims for accounting are not standalone claims, but merely derivative of their breach of fiduciary duty claims.

meet and confer and agree on a joint proposed Judgment which is consistent with this Order. The parties shall lodge the joint proposed Judgment with the Court on or before **March 13, 2020**. In the unlikely event that counsel are unable to agree upon a joint proposed Judgment, the parties shall each submit separate versions of a proposed Judgment along with a Joint Statement setting forth their respective positions on or before **March 13, 2020.**

    IT IS SO ORDERED.